IN THE CIRCUIT COURT OF PRINCE GEORGE'S COUNTY, MARYLAND

JUREL DAQUONE LEO BOWMAN  \*
5 BIRCH BARK COURT  \*
INDIAN HEAD, MARYLAND 20640  \*
  \*
    Plaintiff,  \*
  \*
v.  \* Case No. CAL21-08262
  \*
TOP GUN OF VIRGINIA, INC.  \*
15120-A SOUTH LAWN LANE  \*
ROCKVILLE, MARYLAND 20850  \*
  \*
SERVE: CSC-LAYWERS INCORPORATION  \*
SERVICE COMPANY  \*
7 ST. PAUL STREET, SUITE 820  \*
BALTIMORE, MARYLAND 21202  \*
  \*
AND  \*
  \*
RAMIRO AMBRIZ  \*
12920 OCCOQUAN ROAD, TRLR 32  \*
WOODBRIDGE, VIRGINIA 22192  \*
  \*
AND  \*
  \*
MATTHEW TOWLE  \*
9709 WATERFRONT DRIVE  \*
MANASSAS, VIRGINIA 20111  \*
  \*
AND  \*
  \*
JAMES WILCOXON  \*
5900 SERENITY LANE  \*
DERWOOD, MARYLAND 20855  \*
  \*
    Defendants.  \*

## COMPLAINT

The Plaintiff, Jurel Daquone Leo Bowman (hereinafter "Bowman"), by his attorneys, George P. Patterson and Patterson Law, LLC, files suit for personal injuries and state as follows:

EXHIBIT A

## PARTIES

1. Bowman, Plaintiff, is a resident of Charles County, Maryland.

2. Ramiro Ambriz (hereinafter "Ambriz"), Defendant, is a resident of Woodbridge, Virginia, and is an employee, agent and/or servant of Defendant Top Gun of Virginia, Inc.

3. Top Gun of Virginia, Inc. (hereinafter "Top Gun"), Defendant, is a business entity with its principal office in Rockville, Maryland and it transports goods in trucks in Prince George's County, Maryland.

4. Top Gun of Virginia, Inc. in filings with the Maryland State Department of Assessments and Taxation states that it is a corporation formed in Delaware with a principal office located in Rockville, Maryland. The Maryland State Department of Assessments and Taxation defines the principal office address as the address of the principal physical office location of the business in its home state or county.

5. Matthew Towle (hereinafter "Towle") was the operations manager for Top Gun of Virginia and was designate as the operations manager for Top Gun on the MCS-150 form confirming that he knew the applicable Federal Motor Carrier Safety Regulations and would be responsible for Top Gun's compliance to those regulations. Matthew Towle has also been designated as the contact person by Top Gun for a Safety Review of the company initiated after multiple safety violations. This review was conducted by the Department of Transportation prior to the subject accident. Mr. Towle was responsible for verifying that defendant, Ambriz had a proper DOT medical clearance to drive a commercial motor vehicle and knew how to comply with driving

skills and standards mandated by the Federal Motor Carrier Safety Act.

6. James Wilcoxon (hereinafter "Wilcoxon") was the Chief Executive Officer and Director of Top Gun on or about the date of the accident. He also operated the principal office of Top Gun located in Rockville Maryland. James Wilcoxon also operates other entities that own and operate commercial motor vehicles subject to the Federal Motor Carrier Safety Act. James Wilcoxon has previously been designated as the President of Top Gun on MCS-150 forms. James Wilcoxon participated in the management and execution of Top Gun's business activities in Maryland including the business venture that encompassed the route that the Commercial Motor Vehicle and driver took on behalf of Top Gun that led to this crash. Mr. Wilcoxon knew or should have known about the history of safety violations involving Top Gun Commercial Motor Vehicles and their drivers.

7. Defendant Ambriz carries on a regular vocation as a commercial truck driver in Maryland.

8. Top Gun of Virginia, Inc. operates in North Carolina on their filings with the North Carolina Secretary of State identifies their standard and business address as being located in Rockville, Maryland. The Chief Executive Officer's address is also listed in Rockville, Maryland.

## JURISDICTION

9. The truck accident giving rise to this Complaint occurred in Prince George's County, Maryland on or about September 5, 2018.

10. The provisions of 49 CFR §§301-339, commonly referred to as the "Federal Motor Carrier Safety Regulations" or "FMCSR" are applicable to this case.

11. On or about the 5th day of September 2018, Plaintiff Bowman was driving a tow truck owned by Metropolitan Towing, Inc., traveling southbound on Route 301 by the train tracks south of Route 4 in Upper Marlboro, in Prince George's County, Maryland. At the time of this accident, a truck driven by Defendant Ambriz and owned by Defendant Top Gun struck Plaintiff Bowman's vehicle in the rear, which then forced Plaintiff Bowman's vehicle into the tanker truck stopped in front of his vehicle.

12. The Top Gun truck was loaded with loose aggregate that is heavy and shifts. The aggregate was loaded on to the truck in Maryland and upon information and belief the aggregate was to be delivered to a job site in Maryland.

13. Top Gun of Virginia, Inc., prior to the subject accident, had sent one or more of its trucks on Maryland roads over the weight limit, negligently impacting the truck's ability to stop.

## COUNT ONE
### (Negligence – Top Gun)

14. Plaintiff hereby repeats and realleges, as though set forth fully herein, the allegations contained in Paragraphs 1 through 13 of this Complaint.

15. At all times relevant hereto, Plaintiff Bowman exercises ordinary care in his actions leading up to the collision at issue.

16. At all times relevant herein, Defendant Top Gun had a duty to Plaintiff Bowman to properly maintain the vehicle driven by Defendant Ambriz, to hire a driver with a valid commercial driver's license and medical certifications, to properly train Defendant Ambriz to drive a commercial motor vehicle, to properly supervise Defendant Ambriz, to select a safe route that minimized encounters that were hazardous for commercial motor vehicles, to warn the driver that he would be

encountering a railroad crossing such that he may encounter stopped or slowing traffic, to train the driver to prepare for and anticipate that a hazardous materials trucks will come to a stop for a railroad crossing, to drive at a reduced speed when transporting a heavy load due to longer rollovers, stopping distances, and when making an emergency maneuver.

17. The Defendant, Top Gun, breached its aforementioned duties to the Plaintiff, Bowman, in failing to properly maintain the vehicle driven by Defendant Ambriz, in failing to select a driver with a valid DOT exam to make certain he was medically fit to drive a commercial motor vehicle, in failing to properly train Defendant Ambriz to drive a commercial motor vehicle, in failing to properly supervise Defendant Ambriz, in failing to select a safe route, in failing to select a safe time to send a loaded commercial vehicle on Route 301.

18. The Defendants negligently loaded a commercial motor vehicle with heavy loose aggregate that the truck's suspension and the driver were not equipped and/or trained to prevent the truck from rolling over and failing to slow for stopped traffic.

19. These trucks were loaded with aggregate and are known to be unstable during certain maneuvers. This particular truck had an extra set of wheels to help stabilize the truck during the unloading of the aggregate.

20. The Defendant negligently selected a route and failed to adequately train, warn, and/or advise the driver in the areas of space management, driving at reduced speed and visually scanning ahead for hazards that were inherent in the route selected by the Defendant.

21. Had the Defendant followed the above standards, the truck driver would have approached the railroad crossing at a reduced speed and at a safe following distance. This would have prevented the crash.

22. Had a safe route, in terms of times and roadways, been selected, the particular traffic conditions encountered by the truck driver could have been avoided.

23. As a direct and proximate result of the negligence of the Defendant, Top Gun, the Plaintiff, Bowman, received severe, painful and permanent injuries to his body, which has caused him and will continue to cause him great pain and mental anguish.

24. As a direct and proximate cause of the Defendant's negligence, Plaintiff Bowman's vehicle was driven into a tanker truck with a hazmat placard utilized for corrosive materials such as phosphoric acid. Plaintiff Bowman suffered pre- and post-impact fright from being driven into this vehicle.

25. The impact forced this hazardous material tanker truck onto the rail road tracks further exacerbating Plaintiff Bowman's fear of a catastrophic toxic disaster occurring.

26. As a further direct and proximate result of the negligence of the Defendant, Top Gun, the Plaintiff, Bowman, have been forced to expend and will continue to expend in the future large sums of money for hospitalization, x-rays, doctors, nurses, medical treatment, and medications in the treatment of his aforesaid injuries. In addition, he sustained a loss of income and a permanent loss of earning capacity.

27. At no time relevant herein were the Plaintiff, Bowman, contributorily

negligent nor did he assume the risk.

Wherefore, the Plaintiff, Jurel Daquone Le Bowman, seeks judgment against Defendants Top Gun of Virginia, Inc., Ramiro Ambriz, Matthew Towle, and James Wilcoxon in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest and costs of this suit.

### COUNT TWO
### (Negligence - Ambriz)

28.     Plaintiff hereby repeats and realleges, as though set forth fully herein, the allegations contained in Paragraphs 1 through 27 of this Complaint.

29.     At all times relevant herein, Defendant Ambriz, had a duty to Plaintiff Bowman to maintain a proper lookout; to exercise due care in the operation of his truck; to operate the truck in a safe and prudent manner; to maintain control over his truck; to drive in accordance with all prevailing Federal and Maryland traffic rules and regulations, to drive in accordance with all Maryland trucking regulations and Federal Motor Carrier Safety Regulations, and otherwise to pay full time and attention in the operation of his truck.

30.     Defendant Ambriz, while driving a commercial motor vehicle weighing over 55,000 lbs. plus the weight of a full load, ran into the back of Plaintiff Bowman's tow truck that was slowing for a tanker truck apparently carrying hazardous materials that was stopping before crossing railroad tracks. Defendant Ambriz drove Plaintiff Bowman's truck into the back of the tanker truck. Defendant Ambriz's truck turned over spilling aggregate from concrete.

31.     The Defendant, Ambriz, breached his aforementioned duties to the Plaintiff, Bowman, in failing to maintain a proper lookout; in failing to practice space

management; in failing to exercise due care in the operation of his truck; in failing to operate his truck in a safe and prudent manner; in failing to reduce the speed of his truck to avoid a collision; in failing to maintain control of his truck; in failing to maneuver his truck so as to avoid a collision with the vehicle driven by Plaintiff Bowman; in failing to drive in accordance with all prevailing Maryland traffic rules and regulations; in failing to select a safe route; in failing to drive in accordance with all Maryland trucking regulations and Federal Motor Carrier Safety Regulations; and otherwise in failing to pay full time and attention to the operation of his truck. He was cited for failing to give full time and attention and for following too closely. Defendant Ambriz had a duty to drive at an appropriate reduced speed, to manage the space around his vehicle and to scan the roadway ahead for hazards. Defendant Ambriz breached all of these duties.

32. As a direct and proximate result of the negligence of the Defendant, Ambriz, the Plaintiff, Bowman, received severe, painful and permanent injuries to his body, which have caused him and will continue to cause him great pain and mental anguish.

33. As a further direct and proximate result of the negligence of the Defendant, Ambriz, the Plaintiff, Bowman, has been forced to expend and will continue to expend in the future large sums of money for hospitalization, x-rays, doctors, nurses, medical treatment, and medications in the treatment of his aforesaid injuries. In addition, he sustained a loss of income and a permanent loss of earning capacity.

34. At no time relevant herein was the Plaintiff, Bowman, contributorily negligent nor did he assume the risk.

Wherefore, the Plaintiff, Jurel Daquone Leo Bowman, seeks judgment against Defendants Top Gun of Virginia, Inc., Ramiro Ambriz, Matthew Towle, and James Wilcoxon in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest and costs of this suit.

## COUNT THREE
### (Respondeat Superior – Top Gun)

35. Plaintiff hereby repeats and realleges, as though set forth fully herein, the allegations contained in Paragraphs 1 through 34 of this Complaint.

36. At the time of this accident, Defendant Ambriz was operating a vehicle owned by Top Gun and acting as the agent, servant or employee of Top Gun.

37. At the time of this accident, Defendant Ambriz was advancing the interests of Defendant Top Gun, and accordingly, under Maryland law, is responsible for the damages caused by the negligence of Defendant Ambriz.

Wherefore, the Plaintiff, Jurel Daquone Leo Bowman, seeks judgment against Defendants Top Gun of Virginia, Inc., Ramiro Ambriz, Matthew Towle, and James Wilcoxon in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest and costs of this suit.

## COUNT FOUR
### (Negligent Entrustment – Top Gun)

38. Plaintiff hereby repeats and realleges, as though set forth fully herein, the allegations contained in Paragraphs 1 through 37 of this Complaint.

39. On or about September 5, 2018, Defendant Top Gun negligently entrusted its vehicle to Defendant Ambriz.

40. Defendant Top Gun negligence in entrusting the vehicle to Defendant

Ambriz and Defendant Ambriz's negligence in operating that vehicle, concurrently and proximately caused the Plaintiff's injuries.

41. As a result of the aforesaid negligence of Defendant Top Gun's entrustment of his truck to Defendant Ambriz, the accident was caused without any contributory negligence on the part of the Plaintiff.

42. Defendant Top Gun was also independently negligent in the following ways:

    a. Negligently hiring or contracting with Defendant Ambriz to drive the truck at issue;

    b. Negligently training Defendant Ambriz as to the procedures for space management;

    c. Negligently entrusting Defendant Ambriz to drive a truck professionally;

    d. Negligently retraining Defendant Ambriz to drive the truck at issue;

    e. Failing to conduct proper and required check on the background of its employee, agent and/or contractor, Defendant Ambriz

    f. Failing to supervise its employee, agent and/or contractor, Defendant Ambriz;

    g. Failing to exercise ordinary care to determine its employees', agents' and/or contractors' fitness for the task of driving a commercial vehicle interstate;

    h. Failing to have or enforce an appropriate policy on properly and safely performing space management and safe speeds;

  i. Negligently routing this driver and/or negligently allowing this driver to drive too close to vehicles and not leave sufficient space and time to stop for traffic;

  j. Negligently failing to train and warn Defendant Ambriz that he was being routed onto a high speed roadway with heavy traffic and a railroad crossing that would require him to maintain significant space ahead of his vehicle, to drive at a reduced speed and to scan the roadway for hazards and potential hazards;

  k. Failing to follow proper protocols to verify that trucks were loaded within weight limits before permitting drivers to drive trucks;

  l. Otherwise violating state laws and federal regulations governing trucking companies; and

  m. Otherwise failing to act as a reasonably prudent company under the circumstances.

43. Defendant Top Gun had a duty to promulgate and enforce rules and regulations to ensure its drivers and vehicles were reasonably safe, and negligently failed to do so.

44. As a direct and proximate result of the negligence of the Defendant, Top Gun, the Plaintiff, Bowman, received severe, painful and permanent injuries to her body, which have caused him and will continue to cause him great pain and mental anguish.

45. As a further direct and proximate result of the negligence of the Defendant, Top Gun, the Plaintiff, Bowman, has been forced to expend and will

continue to expend in the future large sums of money for hospitalization, x-rays, doctors, nurses, medical treatment and medications in the treatment of his aforesaid injuries. In addition, he sustained a loss of income and a permanent loss of earning capacity.

Wherefore, the Plaintiff, Jurel Daquone Leo Bowman, seeks judgment against Defendants Top Gun of Virginia, Inc., Ramiro Ambriz, Matthew Towle, and James Wilcoxon in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest and costs of this suit.

## COUNT FIVE
### (Negligence – Towle)

46. Plaintiff hereby repeats and realleges, as though set forth fully herein, the allegations contained in Paragraphs 1 through 45 of this Complaint.

47. At all times relevant hereto, Plaintiff Bowman exercises ordinary care in his actions leading up to the collision at issue.

48. At all times relevant herein, Defendant Towle had a duty to Plaintiff Bowman to properly maintain the vehicle driven by Defendant Ambriz, to hire a driver with a valid commercial driver's license and/or DOT medical exam, to properly train Defendant Ambriz to drive a commercial motor vehicle, and to properly supervise Defendant Ambriz.

49. The Defendant, Towle, breached his aforementioned duties to the Plaintiff, Bowman, in failing to properly maintain the vehicle driven by Defendant Ambriz, in failing to select a driver with a valid DOT exam to make certain he was medically fit to drive a commercial motor vehicle, in failing to properly train Defendant Ambriz to drive a commercial motor vehicle, and in failing to properly supervise

Defendant Ambriz.

50. The Defendants negligently loaded a commercial motor vehicle with contents that the truck's suspension and the driver were not equipped and/or trained to prevent the truck from rolling over and failing to slow for stopped traffic.

51. As a direct and proximate result of the negligence of the Defendant, Towle, the Plaintiff, Bowman, received severe, painful and permanent injuries to his body, which has caused him and will continue to cause him great pain and mental anguish.

52. As a further direct and proximate result of the negligence of the Defendant, Towle, the Plaintiff, Bowman, have been forced to expend and will continue to expend in the future large sums of money for hospitalization, x-rays, doctors, nurses, medical treatment, and medications in the treatment of his aforesaid injuries. In addition, he sustained a loss of income and a permanent loss of earning capacity.

53. At no time relevant herein were the Plaintiff, Bowman, contributorily negligent nor did he assume the risk.

Wherefore, the Plaintiff, Jurel Daquone Leo Bowman, seeks judgment against Defendants Top Gun of Virginia, Inc., Ramiro Ambriz, Matthew Towle, and James Wilcoxon in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest and costs of this suit.

### COUNT SIX
### (Negligence – Wilcoxon)

54. Plaintiff hereby repeats and realleges, as though set forth fully herein,

the allegations contained in Paragraphs 1 through 53 of this Complaint.

55. At all times relevant hereto, Plaintiff Bowman exercises ordinary care in his actions leading up to the collision at issue.

56. At all times relevant herein, Defendant Wilcoxon had a duty to Plaintiff Bowman to properly maintain the vehicle driven by Defendant Ambriz, to hire a driver with a valid commercial driver's license with a valid DOT medical examination, to properly train Defendant Ambriz to drive a commercial motor vehicle, and to properly supervise Defendant Ambriz.

57. Defendant Wilcoxon is a founding member of the company that ultimately became Top Gun of Virginia, Inc. He is currently an owner of Top Gun of Virginia, Inc.

58. Defendant Wilcoxon has identified himself in corporate filings as the Director and CEO of Top Gun of Virginia.

59. Defendant Wilcoxon had participated in developing procedures and protocols utilized by Top Gun of Virginia on the date of the accident to make sure that the company's drivers and commercial motor vehicles were in full compliance with the Federal Motor Carrier Safety Act.

60. Defendant Wilcoxon had participated in the training and supervision of the safety directors for Defendant Top Gun that trained, supervised and selected Defendant Ambriz to drive a commercial motor vehicle.

61. Defendant Wilcoxon had a supervisory role in the business operations of Top Gun in Maryland on or about the date of the accident.

62. The Defendant, Wilcoxon, breached his aforementioned duties to the

Plaintiff, Bowman, in failing to properly maintain the vehicle driven by Defendant Ambriz, in failing to select a driver with a valid DOT exam to make certain he was medically fit to drive a commercial motor vehicle, in failing to properly train Defendant Ambriz to drive a commercial motor vehicle, and in failing to properly supervise Defendant Ambriz.

63. Defendant Wilcoxon knew or should have known the hazards of driving a truck with a heavy load on a high speed roadway with a railroad crossing during a high traffic time period.

64. Defendant Wilcoxon had a duty, particularly due to his experience and familiarity with the roadway and traffic conditions of this Maryland route, to select a different route, to route the driver during a time of the day when there was less congestion on Route 301, to warn the driver to reduce his speed due to a heavy load, to increase the amount of space that he maintained in front of his vehicle, to scan the roadway for potential hazards near and into the distance, to anticipate that a commercial truck transporting hazardous materials would come to a stop before crossing a railroad crossing, and to notify the driver in advance of the location of the railroad crossing. Defendant Wilcoxon breached these duties.

65. The Defendants negligently loaded a commercial motor vehicle with contents that the truck's suspension and the driver were not equipped and/or trained to prevent the truck from rolling over and failing to slow for stopped traffic.

66. As a direct and proximate result of the negligence of the Defendant, Wilcoxon, the Plaintiff, Bowman, received severe, painful and permanent injuries to his body, which has caused him and will continue to cause him great pain and mental

anguish.

67. As a further direct and proximate result of the negligence of the Defendant, Wilcoxon, the Plaintiff, Bowman, have been forced to expend and will continue to expend in the future large sums of money for hospitalization, x-rays, doctors, nurses, medical treatment, and medications in the treatment of his aforesaid injuries. In addition, he sustained a loss of income and a permanent loss of earning capacity.

68. At no time relevant herein were the Plaintiff, Bowman, contributorily negligent nor did he assume the risk.

Wherefore, the Plaintiff, Jurel Daquone Leo Bowman, seeks judgment against Defendants Top Gun of Virginia, Inc., Ramiro Ambriz, Matthew Towle, and James Wilcoxon in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest and costs of this suit.

Respectfully submitted by,

George P. Patterson, Esquire
CPF No. 9612190038
Patterson Law, LLC
1 Willow Street
Annapolis, MD 21401
301-383-1522/240-206-9398 (fax)
E-mail: gpatterson@pattersonlawyers.com
*Counsel for Plaintiff*