IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JUREL DAQUONE LEO BOWMAN, | * | |
| Plaintiff, | * | |
| v. | * | Case No. TJS-21-2207 |
| TOP GUN OF VIRGINIA, INC., *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Pending before the Court is Plaintiff Jurel Daquone Leo Bowman's ("Bowman") Motion to Remand ("Motion") (ECF No. 36).[1] Having considered the submissions of the parties (ECF Nos. 36, 38 & 41), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be denied.

**I.   Background**

This lawsuit arises from a motor vehicle collision that occurred in Prince George's County, Maryland on September 5, 2018. ECF No. 7 ¶ 9. On that date, Bowman was driving a tow truck, "traveling southbound on Route 301 by the train tracks south of Route 4" in Upper Marlboro, Maryland. *Id.* ¶ 11. Bowman alleges that his tow truck was struck in the rear by a truck owned by Defendant Top Gun of Virginia, Inc. ("Top Gun"). *Id.* According to Bowman, Top Gun's truck "was loaded with loose aggregate that is heavy and shifts." *Id.* ¶ 12. The impact caused Bowman's truck to strike the tanker truck stopped in front of his vehicle. *Id.* ¶ 11. Bowman was injured. *Id.* ¶¶ 24-26.

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals if an appeal is filed. ECF Nos. 24, 29 & 30.

Bowman filed this lawsuit in the Circuit Court for Prince George's County, Maryland. ECF No. 7. His Complaint names the following defendants: Top Gun, Ramiro Ambriz ("Ambriz") (the driver of Top Gun's truck), Matthew Towle ("Towle") (Top Gun's operations manager), and James Wilcoxon ("Wilcoxon") (Top Gun's Chief Executive Officer and Director) (collectively, the "Defendants"). *Id.* ¶¶ 2-6.

Defendants timely removed the case to this Court on the basis of diversity jurisdiction, *see* 28 U.S.C. §§ 1332 and 1441, on August 27, 2021. ECF No. 1. Defendants allege that there is complete diversity between the parties and that the amount in controversy exceeds $75,000. *Id.* at 2. According to Defendants' Notice of Removal, at the time that the Complaint was filed and at the time of removal, Bowman was a citizen of Maryland, Ambriz was a citizen of Virginia, Towle was a citizen of Virginia, Top Gun was a citizen of Delaware and Virginia, and Wilcoxon was a citizen of Maryland. *Id.* at 2-3. Defendants argue that although Wilcoxon is a citizen of Maryland, there is still complete diversity among the parties because Wilcoxon is either a nominal defendant or a defendant who has been fraudulently joined, and whose non-diverse citizenship can be disregarded for jurisdictional purposes. *Id.* at 3-4.

Bowman timely notified the Court of his intent to file a motion to remand the case to the Circuit Court for Prince George's County. ECF No. 12. By filing this notice, the time for Bowman to file his motion to remand was tolled until the Court entered a briefing schedule. *See* ECF No. 10 at 2. The Court granted Bowman leave to file the Motion during a telephone conference held on September 15, 2021, and subsequently entered a briefing schedule for the Motion. ECF Nos. 20 & 23. The parties complied with the deadlines in the briefing schedule, and Bowman's Motion is now ripe for resolution.

**II.     Discussion**

   **A.     Legal Standard**

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action to a federal district court when the plaintiff could have originally brought the case in federal court. A motion challenging the removal of an action may be premised on either a lack of subject matter jurisdiction or a procedural defect apart from jurisdiction. *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008). The burden to establish federal jurisdiction falls on the removing party, with a removing party's jurisdictional allegations strictly construed in favor of remand. *Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("If federal jurisdiction is doubtful, a remand is necessary."). Ultimately, a party seeking removal must establish that the district court can exercise original jurisdiction over the plaintiff's claims, which in most cases requires allegations supporting either federal question or diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332, respectively. *Id.* (citing § 1441).

When considering a motion to remand, the Court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court," consistent with the reluctance of federal courts "to interfere with matters properly before a state court." *Rizwan v. Lender Servs. Inc.*, 176 F. Supp. 3d 513, 515 (D. Md. 2016) (citing *Barbour v. Int'l. Union*, 640 F.3d 599, 615 (4th Cir. 2011), *abrogated by statute on other grounds by* 28 U.S.C. § 1446(b)(2)(B)). "Nevertheless, because the decision to remand is largely unreviewable, district courts should be cautious about denying defendants access to a federal forum." *Jarrett v. Home Depot U.S.A., Inc.*, No. SAG-21-1514, 2021 WL 3288361, at *2 (D. Md. Aug. 2, 2021).

The parties agree that this Court's subject matter jurisdiction must be premised on diversity. A federal district court has diversity jurisdiction when: (1) the amount in controversy

exceeds $75,000; and, (2) "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); 28 U.S.C. § 1332. Under 28 U.S.C. § 1332(c)(1), a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." A corporation's "principal place of business" is "the place where [its] officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). A "state of incorporation" is the state by whose laws the corporation was created. *Id.* at 85 (citation omitted). Ambriz and Towle are citizens of Virginia. Top Gun is a citizen of both Virginia and Delaware.[2] Bowman and Wilcoxon are citizens of Maryland. Because Bowman and Wilcoxon share Maryland citizenship, the Court does not have diversity jurisdiction over this case unless the Defendant can prove fraudulent joinder as to Wilcoxon.

### B. Fraudulent Joinder

Under the fraudulent joinder doctrine, a complaint that names nondiverse defendants does not defeat diversity jurisdiction. *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015). Rather, the fraudulent joinder doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).

---

[2] Bowman suggests in his Motion that Top Gun is a citizen of Maryland. ECF No. 36 at 6-7. Defendants have submitted uncontroverted evidence that Top Gun is not a citizen of Maryland, ECF No. 38-1 ¶¶ 10-14, and Bowman appears to have abandoned any argument to the contrary, *see* ECF No. 41. The confusion seems to have been caused by the fact that several related but separate entities are named "Top Gun." In any event, Bowman only seeks remand on the basis of Wilcoxon's Maryland citizenship.

"The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). The removing party must show either "'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Id.* (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). Where, as here, the removing party relies on the "no possibility" formulation of the fraudulent joinder doctrine, the party seeking remand must show "only a possibility of a right to relief," a standard that heavily favors the party seeking remand. *Johnson*, 781 F.3d at 704 (quoting *Marshall*, 6 F.3d at 233); *Hartley*, 187 F.3d at 426 (explaining that "there need be only a slight possibility of a right to relief," and that "[o]nce the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends"). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id.* at 424.

"[F]raudulent joinder is typically only found in cases of legal impossibility." *Flores v. Ethicon, Inc.*, 563 F. App'x 266, 269 (4th Cir. 2014). In analyzing a plaintiff's claims to determine whether joinder was fraudulent, the Court is "not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *Mayes*, 198 F.3d at 464 (internal quotation marks omitted); *but see Middel v. Middel*, 471 F. Supp. 3d 688, 692 (D. Md. 2020) ("[T]he jurisdiction of this Court depends on the state of the facts at the time the actions were brought." (citing *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004)); *Gomer v. Home Depot U.S.A., Inc.*, No. GLR-16-356, 2016 WL 5791226, at *4 (D. Md. Oct. 4, 2016) ("When a plaintiff amends his complaint after removal, the court considers the original complaint rather than the amended complaint in determining whether

removal was proper." (quoting *Pinney v. Nokia, Inc.*, 402 F.3d 430, 443 (4th Cir. 2005))); *Allard v. Laroya*, 163 F. Supp. 3d 309, 312 (E.D. Va. 2016) (concluding that a court should not look beyond the pleadings when the plaintiff named a nondiverse defendant in its initial complaint in state court); *Dotson v. Elite Oil Field Servs., Inc.*, 91 F. Supp. 3d 865, 870 (N.D.W. Va. 2015) ("[W]hen ruling on a motion to remand based on fraudulent joinder, the Court cannot consider post-removal filings 'to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court.'" (quoting *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999))).

### 1. Bowman Has No Possibility of Recovery Against Wilcoxon

Maryland adheres to the *lex loci delicti* rule to determine the applicable law in tort actions. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744 (2000). Under this rule, the "substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 123 (1983). Because the subject collision occurred in Maryland, the Court will apply the substantive tort law of Maryland.

Bowman's Complaint (ECF No. 7 ¶¶ 54-66) alleges that Wilcoxon is liable for Bowman's injuries under a negligence theory.[3] Importantly, Bowman does not allege that Wilcoxon affirmatively breached any duty that he owed to Bowman. Bowman instead relies on a theory of nonfeasance, alleging that Wilcoxon is liable for the negligence of an employee of Top Gun because of Wilcoxon's purported failures to develop and follow procedures for the maintenance of vehicles, as well as the selection, training, and supervision of Top Gun drivers. *Id.* ¶ 62. Under

---

[3] As required by governing caselaw, the Court will only consider the original Complaint (ECF No. 7) and will disregard the allegations of the Amended Complaint (ECF No. 14), which was filed after the case was removed.

6

Maryland law, there is no possibility that Bowman can recover against Wilcoxon under his negligence theory.

In Maryland, the "general rule is that the corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body."[4] *Metromedia Co. v. WCBM Maryland, Inc.*, 327 Md. 514, 520 (1992) (quoting *Tedrow v. Deskin*, 265 Md. 546, 550-51 (1972)). An officer's "participation in the tort is essential to liability." *Id.* If a corporate officer "takes no part in the commission of the tort committed by the corporation, he is not personally liable therefor unless he specifically directed the particular act to be done, or participated or cooperated therein." *Id.*; *Ferguson Trenching Co. v. Kiehne*, 329 Md. 169, 175 (1993) ("Officers and directors of a corporation generally are insulated from personal liability for the debts of the corporation."). In sum, a corporate officer may only be held liable for the negligence of the corporation if he was a "participant in the wrongful act." *Id.*; *Allen v. Dackman*, 413 Md. 132, 153 (2010) (explaining that a corporate officer "may also be liable despite limitations on his or her liability when he or she is present on a daily basis during commission of the tort and gives direct orders that cause commission of the tort" (internal quotation marks omitted)); *Fletcher v. Havre De Grace Fireworks Co.*, 229 Md. 196, 201 (1962) (holding that officers of a corporation may be held liable for a tort committed by the corporation only if the officers "*specifically directed, or actively*

---

[4] Bowman does not argue that Top Gun's corporate veil can be pierced to hold Wilcoxon liable. *See generally Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 309 (1975) (explaining that shareholders of a corporation are generally not liable for the acts of the corporation except in the case of fraud or when necessary to enforce a paramount equity); *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 552 (D. Md. 2011) ("The fiction of the wholly separate corporate form is jealously guarded by courts in Maryland, where, as a matter of public policy, the power to pierce the corporate veil is to be exercised reluctantly and cautiously." (internal quotation marks and modifications omitted)). And there is no suggestion of fraud or the need to enforce a paramount equity in this case such that veil piercing might be permitted.

7

*participated or cooperated in*, a particular act of commission or omission that wrongfully triggered the series of explosions" that damaged the plaintiff's property); *Levi v. Schwartz*, 201 Md. 575, 583-84 (1953) (holding the president of a corporation personally liable for the corporation's tort where the president participated in the tort by visiting the scene of the tortious operations every day and giving orders to the construction foreman engaged in the tortious conduct). "The focus is on the officer's participation in the wrongful act." *United States for use of Mgmt. & Constr. Servs., LLC v. Sayers Constr., LLC*, No. ELH-20-1232, 2021 WL 1516056, at *10 (D. Md. Apr. 15, 2021) (citing *Metromedia*, 327 Md. at 520).

When evaluating a corporate officer's potential liability under *Metromedia*'s "participation" doctrine, it is useful to draw a distinction between acts that constitute "misfeasance" and those that constitute "mere nonfeasance." *See Aldorasi v. Crossroads Hosp. and Mgmt. Co.*, 344 F. Supp. 3d 814, 822-24 (E.D. Pa. 2018) (applying the "participation" doctrine to conclude that because a corporate officer had violated a duty solely through inaction, their acts were a "mere nonfeasance" and liability could not attach to the officer). Examples of a corporate officer's inaction, which do not subject the officer to liability under the "participation" doctrine, include: failing to maintain a premises in a safe and reasonable manner; failing to warn persons that a condition was a hazard; failing to properly train, instruct, or hire employees, and failing to establish appropriate policies and procedures to keep a premises safe. *Id.* at 824. A corporate officer must take an active role in the commission of a tort for liability to attach; passive behavior and inaction will not suffice. *Cf. Jarrett*, 2021 WL 3288361, at *3 (explaining that "managers may appropriately be held liable for their own tortious conduct," but noting the "clear line between 'affirmative, direct acts of negligence' that managers might carry out in breach of a personal duty

8

of care versus acts that merely constitute performance of, or failure to perform, the employer's nondelegable duties").

Bowman has not alleged that Wilcoxon actually participated in the tort that led to Bowman's injuries. Instead, he alleges that Wilcoxon failed to perform certain duties, the performance of which Bowman alleges was incumbent on Wilcoxon in his role as a corporate officer at Top Gun. Bowman alleges that Wilcoxon failed "to properly maintain the vehicle driven by Defendant Ambriz"; failed "to select a driver with a valid DOT exam to make certain he was medically fit to drive a commercial motor vehicle"; failed "to properly train Defendant Ambriz to drive a commercial motor vehicle"; and failed "to properly supervise Defendant Ambriz." ECF No. 7 ¶ 62. And he alleges that Wilcoxon should have known about "the hazards of driving a truck with a heavy load on a high speed roadway with a railroad crossing during a high traffic time period." *Id.* ¶ 63. Bowman alleges that Wilcoxon failed to perform a number of duties that contributed to the collision:

> to select a different route, to route the driver during a time of day when there was less congestion on Route 301, to warn the driver to reduce his speed due to a heavy load, to increase the amount of space that he maintained in front of his vehicle, to scan the roadway for potential hazards near and into the distance, to anticipate that a commercial truck transporting hazardous materials would come to a stop before crossing a railroad crossing, and to notify the driver in advance of the location of the railroad crossing.

*Id.* ¶ 64. Bowman also generally alleges that "Defendants negligently loaded a commercial vehicle with contents that the truck's suspension and the driver were not equipped and/or trained to prevent the truck from rolling over and failing to slow for stopped traffic." *Id.* ¶ 65.

All of these allegations concern Wilcoxon's failure to take steps that might have prevented the collision that resulted in Bowman's injuries. These allegations of inaction constitute "mere nonfeasance" and are thus insufficient to subject Wilcoxon to personal liability. Further, Wilcoxon

has submitted a declaration under penalty of perjury that disclaims any direct involvement in the tort at issue in Bowman's Complaint. ECF No. 38-1. Wilcoxon states that prior to the collision described in the Complaint, he had no first-hand knowledge about the specific load Ambriz was carrying, Ambriz's delivery destination for the load, the delivery schedule, how much material Ambriz was carrying, the specific route Ambriz was taking, the "pre-collision circumstances" surrounding Ambriz's operation of the vehicle, or "any other issue whatsoever about . . . Ambriz's operation of the vehicle." *Id.* ¶ 15. Wilcoxon states that his lack of knowledge on these topics is consistent with his role at Top Gun (a corporation with at least 40 employees), where Wilcoxon serves as the Chief Executive Officer, without any direct supervisory responsibilities over Ambriz. *Id.* ¶¶ 10, 16. Wilcoxon states that, at a minimum, there were four layers of supervision between Ambriz and himself: the field supervisor (Ambriz's "direct report on the date of the accident"), the job foreman (the field supervisor's direct report), the operations manager (the job foreman's direct report), and the general manager (the operation manager's direct report). *Id.* ¶ 17. Wilcoxon summarizes his involvement in the tort at issue in this case: "I did not personally participate in any way in any of the chain of events that directly led to the accident on U.S. Route 301 on September 5, 2018, involving [Ambriz] and the plaintiff." *Id.* ¶ 18.

There is no allegation of Wilcoxon's participation in the alleged tort that would give rise to a possibility that Bowman could recover against him under Maryland law for negligence. Bowman does not allege that Wilcoxon was present at the site of the collision. He does not allege that Wilcoxon instructed Ambriz to drive a vehicle that he was not qualified to drive, that he should overload his truck, that he should take a route that would make it more likely for him to be involved in a collision, or that he should travel at a time when the traffic volume was highest. Bowman does not allege that Wilcoxon instructed Ambriz not to worry about keeping a lookout for other vehicles,

particularly those stopped at railroad crossings, that Ambriz should collide with another vehicle on the way to his destination, or that Ambriz should conduct himself in any other unreasonable or negligent manner on his journey. There is simply no allegation in Bowman's Complaint that Wilcoxon was personally and directly involved in the commission of the tort at issue in this case. Because Bowman has not alleged in his Complaint that Wilcoxon was directly involved in the tort underlying this lawsuit, either by direct participation in the events that caused the collision, or through directing or instructing another person to take actions that led to the collision, he cannot be held personally liable for the negligence of Top Gun or Ambriz under Maryland law.

### 2. The FMCSR Do Not Change the Result

Bowman attempts to circumvent the outcome required by *Metromedia* by arguing that Wilcoxon may be held liable for negligence because he personally violated certain Federal Motor Carrier Safety Regulations ("FMCSR"), 49 C.F.R. Subt. B, Ch. III, Subch. B, Pt. 350. Although the parties have dedicated much argument to this point, the matter can be easily disposed of. Even assuming that Wilcoxon was subject to the FMCSR because he qualifies as an employer, employee, or a motor carrier (Defendants argue that the FMCSR do not apply to Wilcoxon), the FMCSR do not supplant Maryland's law insulating corporate officers from personal liability for torts in which they did not participate. *See White v. Date Trucking, LLC*, No. ELH-17-1177, 2018 WL 2462921, at *5 (D. Md. June 1, 2018) (explaining that the Motor Carrier Act statutes and the FMCSR "do not dictate that state common law is preempted by the definitions of terms used in those rules, nor do they explain how such a regime would function if such an outcome were intended," and that the "goals and tools [of the Motor Carrier Act and the FMCSR] are distinct from those developed in state legislatures and courts to give justice to tort victims," such that it "would be a mistake to confuse them"). All of Bowman's allegations regarding Wilcoxon's

purported violations of the FMCSR relate to his conduct as a corporate officer in general; they do not concern Wilcoxon's personal involvement in, or direction of, the tort that Ambriz is alleged to have committed. And Bowman has not lodged a claim against Wilcoxon for violation of the FMCSR (the vast majority of courts have concluded that the FMCSR do not create a private right of action for personal injuries, *see White*, 2018 WL 2462921, at *4-6 (concluding that the FMSCR do not create a private right of action and that the FMCSR "are unconcerned with negligence"); *Schramm v. Thompson*, 341 F. Supp. 2d 536, 547 (D. Md. 2004)), so there is no possibility that Bowman can recover against Wilcoxon for such a violation under the original Complaint.[5]

Because Defendants have shown that Bowman has no possibility of recovering against Wilcoxon for negligence, Bowman's Motion to Remand will be denied. The Court will dismiss Bowman's claims against Wilcoxon (including the claim in the Amended Complaint) pursuant to Fed. R. Civ. P. 21.[6] This dismissal is without prejudice to Bowman's right to timely move to file a second amended complaint asserting claims against Wilcoxon if Bowman uncovers evidence that Wilcoxon participated in the underlying tort such that he may be held liable under the *Metromedia* standard.

---

[5] As Judge Gallagher stated in *Jarrett*, "the Court need not leave its common sense at the door when assessing" fraudulent joinder. 2021 WL 3288361, at *3 n.2. As in *Jarrett*, even if Wilcoxon could be held liable for Bowman's injuries, any liability would be joint and several between Wilcoxon and Top Gun by virtue of vicarious liability. Bowman "would seem to have little substantive interest in holding [Wilcoxon] personally liable, given the deeper pockets (and insurance)" of Top Gun. *Id.* "As such, it is difficult to avoid the conclusion that [Bowman has] brought suit against [Wilcoxon] solely to defeat diversity jurisdiction." *Id.* This consideration provides "further support for the Court's ultimate conclusion" that Wilcoxon was fraudulently joined. *Id.*

[6] The pending Consent Motion for Leave to File Amended Complaint (ECF No. 27) will be granted.

**III.     Conclusion**

For the foregoing reasons, Bowman's Motion to Remand (ECF No. 36) is **DENIED**. Pursuant to Fed. R. Civ. P. 21, Bowman's claims against Defendant James Wilcoxon are dismissed without prejudice. An accompanying order follows.

December 8, 2021     /s/
Date     Timothy J. Sullivan
     United States Magistrate Judge